## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

HOWARD BALAKOVICH,

         CASE NO. 2:18-cv-11292
   *Plaintiff*,    DISTRICT JUDGE ARTHUR J. TARNOW
*v.*          MAGISTRATE JUDGE PATRICIA T. MORRIS

COMMISSIONER OF SOCIAL SECURITY,

   *Defendant.*
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (R. 8, 10)

## I.  RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence does not support Defendant Commissioner of Social Security's determination that Plaintiff Howard Balakovich is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment, (R. 8), be **GRANTED**, the Commissioner's Motion, (R. 10), be **DENIED**, and the case be remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g).

## II.  REPORT

### A.  Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned Magistrate Judge to review the final decision of the Commissioner denying Plaintiff's claim for Title II Disability Insurance Benefits (DIB) and Supplemental Income Security Benefits (SSI). (R. 2.) The case is before

1

the Court upon the parties' cross-motions for summary judgment. (R. 8, 10.)

Plaintiff filed applications for DIB and SSI benefits on February 18, 2015, alleging that his disability began on November 14, 2014. (R. 7 at PageID.218, 225.) The Commissioner denied the claim. (*Id.* at PageID.140, 141.) Plaintiff then requested a hearing before an ALJ, which was held on March 23, 2017. (*Id.* at PageID.78-114.) The ALJ issued a decision on May 2, 2017, finding Plaintiff not disabled during the relevant period. (*Id.* at PageID.46-63.) On February 26, 2018, the Appeals Council denied review, (R.7 at PageID.37-39), and Plaintiff filed for judicial review of the final decision on April 25, 2018. (R. 1). He then filed the instant Motion for Summary Judgment on July 10, 2018, (R. 8), the Commissioner countered with its own Motion on September 6, 2018, (R. 10), and Plaintiff responded to the Commissioner's motion. (R.11.)

## B.     Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id*. at 286 (internal citations omitted).

### C.   Framework for Disability Determinations

Disability benefits are available only to those with a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. § 1382c(a)(3)(A). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

3

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The claimant must provide evidence establishing the residual functional capacity, which "is the most [the claimant] can still do despite [his or] her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at

4

241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. ALJ Findings

Following the five-step sequential analysis, the ALJ determined that Plaintiff was not disabled. (R. 7 at PageID.46-68.) At step one, the ALJ found that Plaintiff met the insured status requirements through September 30, 2019, and that he had not engaged in substantial gainful activity since his alleged onset date of November 14, 2014. (*Id.* at PageID.48.) At step two, the ALJ concluded that Plaintiff had the following severe impairments: essential hypertension, peripheral vertigo, cervical disc herniation without myelopathy status post-surgery, right shoulder impingement and mild degenerative change, bilateral carpal tunnel syndrome, obesity, depression, and post-traumatic stress disorder (PTSD). (*Id.*) The ALJ also decided, however, that these impairments did not meet or medically equal a listed impairment at step three. (*Id.* at PageID.50-52.) Next, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform

> light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except the claimant can frequently handle and finger with the left and right upper extremities and can frequently reach overhead with the right upper extremity. He can occasionally climb ramps and stairs, kneel, crouch, crawl, stoop, and balance but never climb ladders, ropes, and scaffolds. The claimant can never be exposed to vibrations, unprotected heights, and moving machinery parts. He is able to understand, remember, and carry out simple instructions and make simple work-related decisions. He can occasionally deal with changes in a routine work setting. The claimant can occasionally deal with supervisors and coworkers but never with the public.

(*Id.* at PageID.53.) At step four, the ALJ found that Plaintiff could not perform any past relevant work. (*Id.* at PageID.62.) At step five, the ALJ found that Plaintiff could perform a limited range of light work and that jobs existed in significant numbers in the national

economy that Plaintiff could perform. (*Id.* at PageID.62-63.) This finding relied on the testimony of the Vocational Expert (VE) about the garment sorter position, DOT code number 222.687-014, mail clerk position, DOT code number 209.687-206, and folder position, DOT code number 369.687-018. (*Id.* at PageID.63.)

### E. Administrative Hearing

#### 1. Plaintiff's Testimony

At the hearing held on March 23, 2017, Plaintiff testified that he achieved an Associate's Degree in Radiology Technology in 1993 and passed the board examination later that year. (R. 7 at PageID.84.) From 2003 until 2011, he worked as a computer tomography technician, performing procedures akin to a CT scan and MRI. (*Id.* at PageID.84-85.) Plaintiff also explained he had done seasonal work as a sales associate in the garden center at Home Depot in Midland, Michigan. (*Id.* at PageID.90-91.) He also talked about his work as a propane delivery driver for Blue Flame in Harrison, Michigan. (*Id.* at PageID.91-92.)

Plintiff testified that he had stopped working after his mother died and that her death had been especially difficult on him since he had been her caretaker. (*Id.* at PageID.93-94.) Plaintiff explained that the stress in his job as a health care tech at University of Michigan Hospital had been exacerbated by a very demanding supervisor. (*Id.* at PageID.96.) Plaintiff's stress had culminated in an incident when he yelled at a young lady at work, and since then, he had employed a service dog and his dog greatly helped him manage stress and maintain a more positive outlook. (*Id.* at PageID.96-97.) Plaintiff also had a helper from Adult Services who had been helping him cook, clean, and do dishes and laundry ever

6

since he tore the rotator cuff in his right shoulder, underwent surgery for his neck, and experienced pain in his shoulder and neck. (*Id.* at PageID.97-98.) Plaintiff remained able to maintain his own personal hygiene without assistance, except that his helper shaved him. (*Id.* at PageID.98.) Plaintiff had not yet had surgery on his right shoulder but did undergo right carpal tunnel surgery in 2015 and left surgery in 2009, although he still drops things after repetitive use of his hands working on the computer. (*Id.* at PageID.99-100.) Plaintiff stated that he could not lift anything over five pounds, e.g., one gallon of milk. (*Id.* at PageID.100.)

The ALJ asked Plaintiff about his dog, which Plaintiff clarified was a therapy dog, not a service dog. (*Id.* at PageID.101.) After Plaintiff had rescued the dog from a shelter and developed a strong connection with dog, Dr. Fachting indicated that Plaintiff could use this dog as a therapy dog, allowing the dog to be with Plaintiff in his apartment. (*Id.*)

Plaintiff testified that he used a CPAP machine to help with his obstructive sleep apnea and that his medications caused drowsiness. (*Id.* at PageID.102.) Plaintiff took a nap every day for "about four hours." (*Id.* at PageID.103.) After cervical spine surgery, Plaintiff could no longer reach overhead and needed assistance from his home helper, who had been with him since his surgery. (*Id.* at PageID.103-104.)

### 2. The VE's Testimony

The ALJ then asked the VE to consider a hypothetical individual with Plaintiff's

age, education, and work experience [who] is able to perform work at the
medium exertional level except that the individual can frequently handle and
finger with the left and right upper extremities, and can frequently reach
overhead with the right upper extremity. Assume that the individual can
frequently kneel, crouch, and crawl, and can occasionally stoop and balance.

> Assume that the individual can occasionally climb stairs and ramps, never climb ladders, ropes, and scaffolds, and can never be exposed to vibrations, unprotected heights, and moving machinery parts. Also, assume that the individual is able to understand, and remember simple instructions, make simple work-related decisions, carry out simple instructions, can occasionally deal with changes in a routine work setting, and can occasionally deal with supervisors and coworkers, but never with the public.

(R. 7 at PageID.107) When asked whether such a person could perform Plaintiff's any of past relevant work, the VE indicated that he could not. (*Id.*) The VE further testified that such a person could, however, perform other jobs in the national economy such as order picker, DOT 922.687-058, SVP 2, medium work (67,000 jobs); production helper, DOT 529.686-070, SVP 2, medium work (60,000 jobs); and cleaner, DOT 381.687-018, SVP 2, medium work (57,000 jobs). (*Id.* at PageID.108) The VE confirmed that her testimony was consistent with the Dictionary of Occupational Titles (DOT) and Selected Characteristics of Occupations (SCO). (*Id.*)

> The ALJ then posed a second hypothetical:

> [A]ssume an individual of the claimant's age, education, and work experience, [who] is able to perform work at the light exertional level except the individual can frequently handle and finger with the left and right upper extremities, and can frequently reach overhead with the right upper extremity. Assume that the individual can occasionally kneel, crouch, crawl, stoop, and balance. Assume that the individual can occasionally climb stairs and ramps, can never climb ladders, ropes, and scaffolds, and can never be exposed to vibrations, unprotected heights, and moving machinery parts. Also, assume that the individual is able to understand, and remember simple instructions, make simple work-related decisions, carry out simple instructions, can occasionally deal with supervisors, and coworkers, never with the public.

(*Id.* at PageID.108-09.) The VE responded that such a person would not be able to perform any of Plaintiff's past relevant work but could perform the following jobs that were

8

available in the national economy: garment sorter, DOT 222.687-014, SVP 2, light work (55,000 jobs); mail clerk, DOT 209.687-026, SVP 2, light work (53,000 jobs); and folder, DOT 369.687-018, SVP 2, light work (56,000 jobs). (*Id.* at PageID.109.) The VE also stated that her testimony was consistent with the DOT and SCO except that "it was just the right upper extremity [that] could only reach overhead, and the DOT does not differentiate between weight." (*Id.* at PageID.109-10.)

> The ALJ then posed a third hypothetical:
>
> [A]ssume an individual of the claimant's age, education, and work experience, [who] is able to perform work at the sedentary exertional level except the individual can occasionally handle and finger with the right and left upper extremities, and can occasionally reach overhead with the right and left upper extremities. Assume that the individual can occasionally kneel, crouch, crawl, stoop and balance. Assume that the individual can occasionally climb stairs and ramps, can never climb ladders, ropes, and scaffolds, and can never be exposed to vibrations, unprotected heights, and moving machinery parts. Also, assume that the individual is able to understand and remember simple instructions, make simple work-related decisions, carry out simple instructions, can occasionally deal with changes in a routine work setting, and can occasionally deal with supervisors, and coworkers, and never with the public. Finally, assume that the individual, in addition to normal scheduled breaks, would require additional breaks resulting in the individual being at least 15 percent off task.

(R.7 at PageID.110.) The VE responded that such a person would be precluded from work because of the amount of time off-task. (R.7 at PageID.11.) In response to questions by Plaintiff's counsel, the VE testified that if a person would be absent two days per month, was limited to no contact with supervisors or coworkers, or was unable to accept criticism from supervisors, all work would be precluded. (R.7 at PageID.111-112.)

### F.      Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations[1] carve the evidence into categories: "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513 (2016). "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a) (2016). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d) (2016). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). Both "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the

---

[1]  Various amendments have been made to the regulations since Plaintiff filed his claim. *See, e.g.*, Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (January 18, 2017) (effective March 27, 2017). Because the changes do not alter the outcome here—and, relatedly, they do not appear to exercise an impermissible retroactive effect on Plaintiff's rights, as the amendments are largely procedural changes in the process for analyzing evidence, *cf. Combs v Comm'r of Soc. Sec.*, 459 F.3d 640, 647 (6th Cir, 2006)—and the parties do not discuss them, it is unnecessary to determine whether they apply. Therefore, like many other courts, I will utilize the regulations in effect when Plaintiff filed his claim and the case was decided by the ALJ, along with the new regulations that explicitly apply to claims during this period. *See, e.g.*, 20 C.F.R. § 404.1527; *see generally* Revisions to Rules Regarding the Evaluation of Medical Evidence, 81 Fed Reg. 62560, 62578 (September 9, 2016); *see also Rodriguez v. Colvin*, 3:15CV1723, 2018 WL 4204436, at *4 n. 6 (D. Conn. 2018) ("[T]he Court reviews the ALJ's decision under the earlier regulations because the plaintiff's application was filed before the new regulations went into effect." (citing *Maloney v. Berryhill*, No. 16-cv-3899, 2018 WL 400772, at *1 (E.D. N.Y. 2018) (same))); *Miller v. Comm'r of Soc. Sec.*, No. 1:17CV0718, 2018 2773372, at *5 n. 3 (N.D. Ohio 2018) ("Plaintiff's claim was filed before March 27, 2017, and the ALJ's decision was rendered before the new regulations took effect. For the sake of consistency, the court continues to cite the language from the former regulations that were in effect at the time of the ALJ's decision."), *rep. & rec. adopted by* 2018 WL 2766020 (N.D. Ohio 2018); *Woodall v. Berryhill*, No. 1:17-cv-01289, 2018 WL 3133442, at *7 n. 3 (N.D. Ohio 2018) (applying the rules effective when the claimant applied for benefits), *rep. & rec. adopted by* 2018 WL 3126552 (N.D. Ohio 2018); *Meeks v. Comm'r of Soc. Sec.*, No. 4:17-cv-45, 2018 WL 1952529, at *4 n. 2 (E.D. Tenn. 2018) (applying the rules effective when the ALJ decided the case).

impairment(s), and physical and mental restrictions." *Id.* When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* § 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Because Plaintiff filed his claim before March 27, 2017, he is entitled to the benefit of the treating-source rule. Under that rule, certain opinions from his treating physicians can receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(c)(2). The ALJ does not owe a treating

11

opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d). Thus, the ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits must give specific reasons, supported by record evidence, for the weight granted to a treating source's opinion. *Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

An ALJ must also analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996).[2] Credibility determinations regarding a claimant's subjective complaints rest with

---

[2] Although the Commissioner has rescinded SSR 96-7p and eliminated the term "credibility" from Administration policy, SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016), the underlying regulation has remained materially unchanged, *see* 20. C.F.R. § 404.1529(c), and I agree with the courts in this District that have continued to apply SSR 96-7p to cases arising prior to its rescission. *See, e.g.*, *Cooper v. Comm'r of Soc. Sec.*, No. 16-cv-13477, 2017 WL 3923984, at *3 (E.D. Mich. August 21, 2017), *Rep. & Rec. adopted by* 2017 WL 3891971 (E.D. Mich. Sept. 9, 2017); *Tuttle v. Comm'r of Soc. Sec.*, No. 16-11144, 2017 WL

the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529(a) (2016); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529 (2016); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments will "not alone establish that [he or she is] disabled." 20 C.F.R. § 404.1529(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply

---

2928021, at *6 n. 3 (E.D. Mich. June 9, 2017), *Rep. & Rec. adopted by* 2017 WL 2905125 (E.D. Mich. July 7, 2017).

because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). Instead, the absence of objective, confirming evidence forces the ALJ to consider the following factors:

(i)    [D]aily activities;
(ii)   The location, duration, frequency, and intensity of . . . pain;
(iii)  Precipitating and aggravating factors;
(iv)   The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
(v)    Treatment, other than medication, . . . received for relief of . . . pain;
(vi)   Any measures . . . used to relieve . . . pain.

20 C.F.R. § 404.1529(c)(3) (2016); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996). Furthermore, the claimant's work history and the consistency of his or her subjective statements are also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996).

## G.    Arguments and Analysis

Plaintiff makes three arguments in support of his conclusion that substantial evidence does not support the ALJ's decision. The first is that the ALJ failed to note that Plaintiff's sleep apnea is a severe impairment and, alternatively, failed to give reasons why sleep apnea is not a severe impairment. Plaintiff's second argument is that the ALJ's credibility analysis is flawed. For his third argument, Plaintiff posits that the ALJ erred with respect to his evaluation of the medical source opinion evidence.

### 1.  Severe impairment - Sleep Apnea

Plaintiff argues that the ALJ "makes no mention or account for the claimant's sleep apnea or how it may affect the claimant from a functional capacity standpoint." (R. 8 at PageID.789.) Although the ALJ may have failed to mention sleep apnea, he does discuss,

14

in several places of his analysis, Plaintiff's difficulties with sleeping. (R. 7 at PageID.52, 54, 60) (Plaintiff "naps for four hours a day" and "has difficulty sleeping" and "that the side effects of medications include drowsiness," but that on December 19, 2016, Dr. Fachting noted that "the claimant's sleep was much better.")

Since Plaintiff "has pointed to no evidence of functional limitations caused by . . . obstructive sleep apnea that are greater than or not already accounted for in the RFC," any error committed by the ALJ is harmless. *Stokes v. Comm'r of Soc. Sec.*, No. 2018 WL 1570388, at *6 (E.D. Mich. Mar. 30, 2018); *Cluchey v. Comm'r of Soc. Sec.*, 2018 WL 1310016, at *8 (E.D. Mich. Feb. 21, 2018) ("Because there is no evidence of functional limitations due to sleep apnea, any error at Step Two is harmless.")

### 2. Credibility Analysis

Next, Plaintiff contends that the ALJ failed to properly assess his reported symptoms and complaints of pain. The ALJ determined that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence in the record. (R. 7 at PageID.54.)

 Plaintiff specifically argues that the cardiology records that the ALJ relied on are irrelevant and do not provide a basis for the ALJ's findings that Plaintiff symptoms were inconsistent with medical records because Plaintiff did not rely on cardiac symptoms as a basis for disability. (R. 8 at PageID.790.) The ALJ does discuss Plaintiff's cardiac issues (including hypertension in the section dedicated to determining the RFC and evaluating Plaintiff's symptoms (R. 7 at PageID.54-55)); however, the ALJ dedicates most of his

15

discussion to Plaintiff's other impairments, i.e., musculoskeletal and neurological systems, dizziness, edema, leg pain, fatigue, dyspnea on exertion, vertigo, gait and station, reflexes, range of motion for his extremities, muscle strength, improvements to his cervical spine after physical therapy, range of motion in his cervical spine, MRIs of his cervical spine, motor and sensation, normal electromyography, normal test results as to mental functioning, and his described daily activities. (*Id.* at PageID.54-58.) The ALJ's assessment of Plaintiff's symptoms did not rest on cardiac issues. The ALJ properly considered the full gamut of Plaintiff's alleged symptoms; there is no error in this approach.

Plaintiff also finds error in the ALJ's treatment of records, specifically pointing to the ALJ's notation that Plaintiff "got a dog" on March 5, 2015, as if "this was somehow inconsistent with the claimant's complaints of disabling symptoms." (R. 8 at PageID.790-91.) Plaintiff argues that "the dog was a service dog given and recommended to him to help him deal with his affective disorder" and that any error about the dog cannot be harmless because "the service dog is necessary as treatment for the claimant." (*Id.* at PageID.791.) The ALJ's reference to the genesis of Plaintiff's relationship with the dog was actually made in the context of evaluating the weight that should be accorded Dr. Fachting's opinion. The ALJ noted that Dr. Fachting "opined that the claimant had a disability-related need for the animal and the claimant met the definition of legally handicapped person and the major life activity, which had been affected as a result of the handicap/disability, which was depression, anxiety, and PTSD." (R. 7 at PageID.60.) However, the ALJ contrasted that Plaintiff "testified that Dr. Fachting found that the claimant's dog that he already obtained from an animal shelter was a therapy dog, so that he would be allowed to have his

16

dog at his apartment." (*Id.*) The ALJ's main point, so it seems, is that the doctor did not seek a therapy dog for Plaintiff, rather, Plaintiff acquired a dog that was already trained, and the doctor condoned Plaintiff's utilizing the dog to help him. This is a different situation from one where a therapy dog is prescribed by the doctor and then obtained per the doctor's orders. I note that Plaintiff's testimony supports the ALJ's distinction. (*Id.* at PageID.101) (Plaintiff testified that he rescued the dog from a shelter and developed a strong connection with the dog, and that then Dr. Fachting indicated that Plaintiff could use this dog as a therapy dog, allowing the dog to be with Plaintiff in his apartment.) The ALJ committed no error in drawing this distinction.

The last example of error cited by Plaintiff is the ALJ's consideration of the report filed by Plaintiff's friend who indicated Plaintiff had no issue with self-care. Plaintiff notes that he testified that since his cervical spine surgery in 2017, he has required the assistance of a helper to help him shave. (R. 8 at PageID.791.) Plaintiff did testify that he has needed a helper since his cervical surgery in 2017. However, the ALJ did not rely on any contradictory opinion from Plaintiff's friend. The ALJ dedicates a paragraph, under his assessment of Plaintiff's symptoms, to the statements. However, the ALJ cites only to the friend's comments that Plaintiff does not handle stress or changes in routine well, had difficulties with authority figures, and had mental limitations in general. (R. 7 at PageID.61.) The ALJ afforded the friend's opinion "only some weight" and never mentioned any statements by the friend regarding Plaintiff's ability to care for himself. Consequently, this argument raises no reversible error.

17

The ALJ properly assessed all the medical evidence and made specific findings that are supported by substantial evidence. Plaintiff's arguments do not undermine the ALJ's assessments.

### 3.  Medical Opinion Evidence

The initial thrust of Plaintiff's argument is that the ALJ improperly gave great weight to the May 20, 2015, consultative psychological opinion based on the ALJ's erroneous conclusion that "the evidence received into the record, after the initial determination, did not provide any new or material information that would alter any findings about the claimant's residual functional capacity" despite the fact that "the evidence entered into the record following the initial determination was substantial." (R. 8 at PageID.791.) Plaintiff contends that the "volume of evidence submitted after the psychological consultant's opinion" undermines the consultant's opinion. (R. 7 at PageID.792.) Plaintiff further argues that the ALJ should not have been the one to determine whether the evidence received after the consultative opinion was entered was substantial or not, because that is "pure speculation on the ALJ's part." (R.8 at PageID.792.) Plaintiff notes that "[i]t is unknown whether or not the state agency consultant would have found that new evidence material because he did not have a chance to evaluate it." (*Id.*) Plaintiff concludes that the ALJ's "making a finding regarding materiality as it pertains to what another doctor may or may not find material . . . is outside the ALJ's expertise" and requires remand. (*Id.*) Plaintiff argues that the consultative opinion should not have been given any weight and that Dr. Fachting's opinion should have commanded more weight from the ALJ. (*Id.* at PageID.793-94.)

18

As to psychological issues, the ALJ considered the non-examining consultative opinion of Dr. George Starrett dated May 20, 2015, and accorded his opinion "great weight." (R. 7 at PageID.58.) The ALJ also considered the opinions of Plaintiff's treating psychologist, Dr. Fachting, rendered on May 7 and June 15, 2015, and February 10 and 21, 2017, and gave Dr. Fachting's opinions less weight than Dr. Starrett's. (*Id.* at PageID.58-61.) Dr. Fachting's opinions were based on his treatment of Plaintiff and the attendant extensive records comprising multiple exhibits in the record.

The Commissioner argues that the ALJ did not err in giving great weight to the non-examining consultative opinion because his treatment comported with the Sixth Circuit standards stated in *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016). The Court in *Kepke* held that *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009), did not set forth a bright-line rule requiring the ALJ to discount a non-examining source's opinion that was made without benefit of all the record medical evidence. Instead, *Kepke* explained that "before an ALJ accords significant weight to the opinion of a non-examining source who has not reviewed the entire record, the ALJ must give 'some indication' that he 'at least considered' that the source did not review the entire record." *Kepke*, 636 F. App'x at 632 (quoting *Blakely*, 581 F.3d at 409). The Commissioner then states that the "ALJ explicitly discussed the subsequent records in his decision" and determined the evidence was not material and wouldn't alter the RFC findings. (R. 10 at PageID.824.)

Although the ALJ found the evidence was not material and did not change his RFC findings, the ALJ did not appear to consider the fact that the non-examining source, Dr.

19

Starrett, lacked the benefit of the two years of medical evidence from 2015 to 2017 when formulating his opinion. (R. 7 at PageID.58.) In other words, the medical evidence post-dating Dr. Starrett's opinion was not viewed under the proper standard as to whether the nearly two years of medical evidence missing from Dr. Starrett's review should affect the weight given his opinion by the ALJ. It is hard to conceive of how nearly two years of medical evidence could be less than material. I therefore suggest that Plaintiff has identified an issue requiring resubmission to the Commissioner to consider the effect the medical evidence post-dating Dr. Starrett's opinion would have on his opinion or, better yet, for the Commissioner to procure updated medical opinions based on more current medical records. *See Kepke*, 636 F. App'x at 632-33; *Blakely*, 581 F.3d at 408-09; *Bowie v. Colvin*, 2013 WL 1912913, at *3 (D. Me. Mar. 31, 2013) ("[A]n RFC opinion of a nonexamining consultant rendered in the absence of review of material later submitted evidence cannot constitute substantial evidence of a claimant's RFC."), *rep. & rec. adopted by* 2013 WL 1912938 (D. Me. May 7, 2013).

### H.    Conclusion

For these reasons, I conclude that substantial evidence does not support the ALJ's decision. Consequently, I recommend **GRANTING** Plaintiff's Motion, (R. 8), **DENYING** the Commissioner's Motion, (R. 10), and remanding the case pursuant to sentence four of 42 U.S.C. § 405(g).

## III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and

file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  June 12, 2019                                   S/ PATRICIA T. MORRIS
                                                       Patricia T. Morris
                                                       United States Magistrate Judge

## <u>CERTIFICATION</u>

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: June 12, 2019                                    By <u>s/Kristen Castaneda</u>
                                                       Case Manager